## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Sammie J. Stroman, | ) | C/A No. 0:10-3240-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| William R. Byars, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Sammie J. Stroman ("Stroman"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 48.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Stroman of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendant's motion. (ECF No. 49.) Stroman filed a response in opposition (ECF No. 64) and the defendant filed a reply (ECF No. 65). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

## BACKGROUND

Stroman is currently housed within the Maximum Security Unit ("MSU") at Kirkland Correctional Institution. Stroman filed this action challenging South Carolina Department of Corrections Policy OP-22.11, which prohibits inmates in MSU from receiving or possessing photographs. In comparison, Stroman argues that inmates housed in the Special Management Unit ("SMU") are permitted to possess three photographs. Stroman states that inmates housed in MSU

are also prohibited from having visitors who are eighteen years of age or younger.  Stroman alleges that he has a thirteen-year-old daughter and the policy prohibiting him from possessing or receiving photographs has caused him to suffer from depression.  Stroman also states that he is not being treated for his depression.  (See Compl., ECF No. 1 at 3-4.)

Stroman seeks a declaration that his rights have been violated and an injunction requiring the South Carolina Department of Corrections ("SCDC") to modify its policy to allow MSU inmates to receive three photographs per year through the institutional mail.  (See id. at 5.)

## DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## B. Access to Photographs[1]

Inmates retain their First Amendment rights in prison. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). In Turner v. Safley, 482 U.S. 78, 89 (1987), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." To meet this standard, the Turner Court identified four factors to consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will

---

[1] Stroman has unequivocally stated that he is not challenging the visitation restriction. (See Pl.'s Mem. Opp'n Summ. J., ECF No. 64 at 2.)



have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. <u>Id.</u> at 89-90. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. <u>Id.</u> at 89; <u>see also</u> <u>In re Long Term Admin. Segregation of Inmates Designated as Five Percenters</u>, 174 F.3d 464, 469 (4th Cir. 1999) ("Prison officials should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

Willie Davis, the Captain of MSU at Kirkland Correctional Institution, attests that MSU "is a specialized housing unit for inmates who have demonstrated an unwillingness to conform to the rules and regulations of a Special Management Unit, who have been charged with violent criminal behavior committed while in the general population, and/or for whom emergency placement has been ordered by the Agency Director or the Deputy Director for Operations." (Davis Aff. ¶ 5, ECF No. 48-2 at 1-2.) Davis avers that MSU houses some of the worst inmates in SCDC and that, typically, placement in MSU is based on conduct by the inmate during his incarceration. (<u>Id.</u> ¶ 6, ECF No. 48-2 at 2.)[2] With regard to Stroman, Davis attests that Stroman was "first transferred to MSU on December 23, 2007, following his involvement in a riot in the Chesterfield Unit at Lee Correctional Institution." (<u>Id.</u> ¶ 6, ECF No. 48-2 at 2.) Davis also states that the MSU Review Board performs independent reviews and assessments of an inmate's suitability for admission to and remaining in MSU and that Stroman's most recent review indicates that Stroman has received

---

[2] The Defendant notes that due to a clerical error, Davis's affidavit contains two paragraphs numbered 6 and two paragraphs numbered 7. (<u>See</u> Mem. Supp. Summ. J. at 3 n.2, ECF No. 48-1 at 3.)



multiple disciplinary violations while he has been housed in MSU. (Id. ¶ 7, ECF No. 48-2 at 2.)[3] Stroman fails to refute any of these statements.[3]

Davis further attests that while photographs are banned from MSU, they are permitted in the general population and in other units. (Id. ¶ 8, ECF No. 48-2 at 2.) Davis explains that "this ban on photographs encourages MSU inmates to correct their behavior in order to obtain their release from MSU to a less restrictive unit where privileges, such as possession of personal photographs, are allowed." (Id.) Finally, Davis avers that MSU's restrictive environment "serves as a deterrent for other inmates to adjust their behavior and conduct in order to avoid placement in MSU." (Id. ¶ 11, ECF No. 48-2 at 3.)

In Beard v. Banks, 548 U.S. 521 (2006), the United States Supreme Court addressed a challenge to a similar prison policy denying newspapers, magazines, and photographs to "a group of specially dangerous and recalcitrant inmates" who were in a prison's long term segregation unit, id. at 525, and held that the prison's stated rationale of motivating better behavior and discouraging other inmates satisfied the Turner factors. Beard, 548 U.S. at 531. Moreover, other courts in this district have found that this policy does not violate an inmate's First Amendments rights. See, e.g., Williams v. Ozmint, C/A No. 6:07-2409-DCN-WMC, 2008 WL 4372986 (D.S.C. Sept. 22, 2008),

---

[3] The court observes that in support of this statement Davis references an "Exhibit B"; however, a review of the defendant's filing does not reveal that an Exhibit B was filed with this motion. (See ECF No. 48.)

[3] Stroman disputes Davis's averment that, as of the date of Davis's affidavit, Stroman was classified as a Level 1 inmate within MSU, which has the fewest privileges. (See Stroman Aff. ¶ 10 and Ex. C, ECF Nos. 64-1 at 3, & 64-4.) However, Stroman's classification within MSU is not material to Stroman's claim that the photograph policy violates his First Amendment rights. Moreover, Stroman generally alleges that Davis's affidavit was submitted in bad faith and in retaliation for a complaint Stroman filed against Davis.

aff'd, 351 Fed. App'x 825 (4th Cir. 2009); Wiles v. Ozmint, C/A No. 0:05-2111-CMC-BM, 2006 WL 2260136 (D.S.C. Aug. 7, 2006).

Stroman challenges the defendant's argument that SCDC's rationale for the policy is reasonably related to legitimate penological interests by arguing that inmates are placed in MSU for long-term segregation as opposed to a discrete period of punishment. Additionally, Stroman submits affidavits of inmates disputing that the policy encourages correction of their behavior. Stroman also argues that the policy interferes with an inmate's ability to remember loved ones. Upon review of Stroman's arguments and affidavits, the court finds that in light of the deference afforded to prison officials, Stroman has failed to present sufficient evidence demonstrating that SCDC's rationale for the policy is not "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89; see also Beard, 548 U.S. at 531. Accordingly, the defendant is entitled to summary judgment on this claim.

## C.     Official Capacity

The only defendant named in this matter is the Director of SCDC in his official capacity. The defendant argues that the Director of SCDC in his official capacity is not a person amenable to suit for monetary damages under 42 U.S.C. § 1983. However, as pointed out by Stroman, he is not seeking monetary relief in this action; rather, he is seeking solely injunctive relief.

## D.     Eighth Amendment

Stroman appears to allege that the defendant violated his Eighth Amendment rights by denying him access to his photographs and visitors under the age of eighteen—causing him to suffer

PJG

from depression, and by failing to treat his depression.[4] Upon review of the record and the parties' arguments, the court finds that Stroman has failed to demonstrate any violation of his Eighth Amendment rights or that he is entitled to any injunctive relief.

To establish a claim under the Eighth Amendment for deliberate indifference to medical needs, an inmate must establish two requirements:  (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety.  Id.  A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk.  Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004).  To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Estelle, 429 U.S. at 105.  To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness."  Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).  Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983.  See Estelle, 429 U.S. at 106.  While the Constitution requires

---

[4] Other than seeking for the court to enjoin enforcement of the photograph policy, it is unclear what additional relief Stroman seeks for these alleged violations.



a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. See Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Stroman has failed to provide any evidence from which a reasonable jury could find deliberate indifference to his medical needs. As stated above, Stroman cannot demonstrate that SCDC's photograph policy does not serve a legitimate penological purpose, and therefore cannot demonstrate that the defendant acted with deliberate indifference toward Stroman with regard to this policy. Additionally, the record contains no support for any allegation that Stroman may be asserting

that the defendant was deliberately indifferent to his medical needs by failing to provide him with treatment for his depression.

In support of their motion for summary judgment, the defendant has provided Stroman's medical records, which show that Stroman was seen repeatedly by mental health counselors while in MSU. (See generally Medical Records, ECF No. 48-5.) The defendant has also provided an affidavit from Clyde Holliday, a licensed master social worker who works in the MSU, averring that he visits MSU daily and is available to all MSU inmates for any issues they may have. (Holliday Aff. ¶¶ 1, 3, ECF No. 48-4 at 1.) Holliday further attests that he visits with Stroman frequently and has no concerns about his mental health. (Id. ¶¶ 2, 10, ECF No. 48-4 at 1, 2.) Moreover, Holliday states that although Stroman is not on the mental health list and does not exhibit any mental illness requiring placement on the list, Stroman may sign up for sick call to see the psychiatrist during the psychiatrist's monthly trip to MSU. (Id. ¶¶ 5-6, 9, ECF No. 48-4 at 2.)

Stroman points to selective older encounters in his medical records that he alleges demonstrate that he was experiencing problems with depression. However, these records do not show that the defendant was deliberately indifferent to a serious medical need because the record unequivocally shows that Stroman was clearly monitored by the mental health counselors and he often reported no issues.[5] Moreover, as stated above, Stroman does not have a claim against the

---

[5] Additionally, the court observes that the defendant, as the director of SCDC, appears to be non-medical personnel. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that the defendant failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or was indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. See id. Stroman's allegations fail to satisfy this standard.

PJG

defendant merely because it appears he disagrees with the course of treatment he received. <u>See</u> <u>Jackson</u>, 846 F.2d at 817; <u>Nelson</u>, 603 F.3d at 449; <u>see</u> <u>also</u> <u>O'Connor</u>, 426 F.3d at 202; <u>Dulany</u>, 132 F.3d at 1240; <u>Fleming</u>, 423 F. Supp. 2d at 1070.

Thus, Stroman cannot establish under controlling case law a medical claim of deliberate indifference against the defendant.

**E.     Equal Protection**

Finally, to the extent that Stroman's Complaint may be construed to allege that the defendant violated his rights under the Equal Protection Clause of the Fourteenth Amendment, Stroman has failed to allege that he is being treated differently from similarly situated inmates. <u>See</u> <u>Veney v.</u> <u>Wyche</u>, 293 F.3d 726, 730 (4th Cir. 2002) (stating that a prisoner claiming an equal protection violation must allege facts demonstrating "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination") (internal quotation marks and citation omitted). The unrefuted evidence demonstrates that inmates in MSU are not similarly situated to inmates in SMU or the general population. <u>See</u> <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10 (1992) (stating that the Equal Protection Clause of the Fourteenth Amendment "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike").

**RECOMMENDATION**

For the foregoing reasons, the record shows as a matter of law that Stroman is not entitled to the relief he seeks. Accordingly, the court recommends that the defendant's motion for summary judgment be granted. (ECF No. 48.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 13, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).